George Hernandez, appellant, appearing pro se. William Fennell, appearing for appellee. Okay. Mr. Hernandez, would you like to reserve some time for rebuttal? Good morning for you, Mr. Honor. Yes, I'd like to reserve ten minutes. I'll take five minutes for the initial. Ten minutes. Okay. Go ahead. Thank you. May it please the panel and thank you to the judges. This case is a bit confusing with the underlying issues that are coming up. In here, we have a case where there was an asset, one asset, which was an LLC, which was inside of another LLC, which was in litigation. At the time of filing in September of 2021, the asset was deemed to be zero because the underlying case may have wiped out the entire value of the LLC, which was Non-Newtonian Management. Non-Newtonian Management entered into a contract to buy a business, but the contract that was entered into was to buy a business that was a nonprofit. And nonprofits, it turns out, can't sell their assets. So there was a chance that the value was going to be zero, and we didn't have any value. I'm concerned about our jurisdiction, and that is the problem of standing. How do you have standing? Is this a solvent case where there's going to be money? It could be money at the end of the case for you as the debtor. It turns out that a receiver was appointed in that case, and the receiver is trying to sell the business at this point and has received offers for $2.5 million in cash for that business. So if Non-Newtonian Management is the owner of the business, which apparently the case had settled and there was some kind of an amount where that entity may have gotten cash, as Newco is a 32% owner, it could have up to $800,000 worth of potential gain from the IRS in that issue. That's the issue of standing. It would be a substantial detriment because the bankruptcy estate would not have… Who would have the gain? I'm sorry. Who would have the gain? Newco LLC would have potentially the gain. If the parent company had an asset that was… But Newco LLC is not an appellant here. You're the appellant, right? Correct, but I'm a 100% shareholder or LLC member of Newco LLC. So this is the asset that was in my bankruptcy that was being sold. But doesn't the tax attributes from transactions that occurred during the bankruptcy case fall on the bankruptcy estate? They don't fall on you personally. How does that affect you? The court addressed that, that in order to sell an asset, the bankruptcy estate has to have money set aside in order to pay the amounts that are due to the IRS, which the court actually addressed in her transcript, and I made mention in my… I took an excerpt of that in the excerpt brief. Mr. Hernandez, where is any of this in the record? It's in… I referred to it on page 23 of my opening brief where the judge made mention… I could look at it real quick for you, and it is… Well, you know, all this talk that you're saying about the sale of Newco assets now, that's not in the record, right? Well, it didn't exist in the record. I did mention it during the hearing that we don't know the actual value of the Newco asset. We need to be able to establish that, which we were only given at the time of the hearing. The only thing we were given was a very, very conclusory statement from the accountant, which the judge herself had mentioned that you can't just have a conclusory statement from the accountant. It's got to be detailed so the judge would be able to look at the facts, and she couldn't. The only thing that was provided was the hearing started at 10 o'clock, and at 11.08, I believe, the accountant for the trustee provided a two-page statement that says there's going to be no tax consequences, which I said, yes, there will. There will almost definitely be tax consequences. But my question is, how do those tax consequences fall on you as opposed to falling on the estate? Well, like I said earlier, the judge had referred specifically to the court. The bankruptcy estate cannot enter into a transaction that it does not have the money to pay for the taxes, because otherwise… Right, but that's the trustee's problem. The trustee sells property and doesn't set aside funds to pay the taxes the trustee owes. That's a problem for the trustee. How is it a problem for a debtor? Well, the IRS is going to come after me. Really? Yes. It's going to be an asset that was sold. It's going to be separate and complete from the actual bankruptcy estate. They're going to issue a tax to me for the sale of that property if they deem it to be $800,000 and they didn't receive any money, and then the bankruptcy estate is going to have to come in. But how is a debtor supposed to incur tax liability when there are cases that say that the bankruptcy estate has to have the money to pay it, and there is no money to pay for this? Furthermore, I wasn't allowed the benefit of going in and getting a dollar amount for the value of that property. It could be enough to satisfy all the creditors in the case. So if $800,000 is coming in from the sale of NewCo, $800,000 would be enough to pay off most of the unsecured creditors. But that's not the case. You say you weren't allowed to go in and get a value. What do you mean by that? What stopped you? You were the owner of the company before the bankruptcy, right? I was, but the sale that was negotiated, it was only negotiated between the trustee and one creditor. There was no information that they were going to actually be transferring one asset specifically. They were going to transfer like seven or eight assets. And then one of those seven assets that were going to be transferred was this entity, which we didn't know what value they had. There was nothing in any of the documents that we would have been able to have an expert go in and refute because they never put a value on it other than what the initial value in the filing was, which is clearly what happened in Fitzgerald. And that case was reversed. The Fitzgerald case, there was a zero value assigned at the beginning, and it turned out that it was worth much more. And when the Fitzgeralds weren't allowed time to review the case, it was remanded because the judge didn't view the proper AC conditions required under Rule 9019. I've taken you well inside your ten minutes you wanted to reserve. If you want to reserve, that's fine. If you want to keep going now, that's fine too, whatever. I just want to remind you where you are. I'll reserve. Okay. All right. Okay. Mr. Fennell. Good afternoon. Give it please the Court. William Fennell on behalf of Ronald Staff Newland, the Chapter 7 trustee in Ability. Ability seeks to set aside the January 10 modified order of the bankruptcy court approving the sale and compromise, intending that four things, essentially, which we disagree with in each contention, that the court changed essential terms of the trustee's proposed agreement, the trustee failed to provide evidence to support his assertions that the sale was proper, that the sale, as approved, would provide no benefit to the estate and its creditors, and lastly, that the trustee's notice of motion for approval of the agreement and authority to enter into the agreement was not properly noticed to creditors, and particularly to the debtor. But before I turn to each of those, the court has already asked about this issue of standing, which I believe the court may have properly already identified, that the appellant doesn't have a pecuniary interest in the outcome of the settlement as the estate is insolvent. Judging from the follow-on questions and Mr. Hernandez's argument today, he seems to be contending that the value of this asset should be somewhere way north of the $50,000 that the bankruptcy estate is getting for it. Judge Mann properly identified that the value of the assets, three things being sold on the final day of hearing, December 22nd, were the interest in NUCCO LLC, the NUCCO action, and the collection action would be settled and compromised. With regard to the value, the court identified that the value to the estate, as I said, would be $50,000 because that's the sale price set after notice to these creditors. And early on in the tentative rulings of the court, there were questions about whether or not Mr. and Mrs. Hernandez were properly noticed. They were. And any contention by Mr. Hernandez today or in his pleadings presented to this court that notice was improper to either him or his wife, Donna Hernandez, is completely incorrect. They were properly served. Let me ask you this. Go ahead, Judge Brand. Please go ahead. I was just going to kind of refocus this on the standing issue because Mr. Hernandez seems to be saying that there's some sort of maybe an $800,000 value to NUCCO from the sale of the non-Newtonian subsidiary that would have created that value. But I thought that I read that the claims of the estate were in excess of, you know, $3.75 million, and it didn't appear that there would be assets to pay those claims, even with the subordination of the Mitchell claims. Am I correct? Or, you know, what's the basis of your saying the estate is administratively insolvent? There is in the record that what we're getting for this sale is $50,000. Right. And what the administrative expenses, trustees' fees, accountants' fees, my attorney's fees, are far north of $100,000 at this point. And Judge Mann asked that turns to the benefit to the estate. The trustee and I made the record before Judge Mann that we would agree to carve out something for unsecured creditors out of this sale. That doesn't leave anything to Mr. Hernandez or Mrs. Hernandez as the debtors, creating a pecuniary interest in them in this transaction. But what about other assets? What about other assets? Because it's not just this transaction that could create standing. The other assets, they're not before the Court here today, but the agreement B is not proceeding. For the record, we have presented a sale of the real properties held by the Sandpiper entity because the Sandpiper entity looks to be just a shell of an entity, and the real parties and interests are the debtors in those two real properties. But we still don't believe that there will be some tax consequences from that real property sale. There will be some tax consequences to the bankruptcy estate from the $50,000 sale that is issued here. But together with all the administrative expenses, we still don't believe that there will be a benefit to Mr. and Mrs. Hernandez, the debtors. Would you agree that whatever tax consequences flow from transactions the trustee enters into, sales, settlements, whatever, would be administrative expenses of the bankruptcy estate and not liabilities of the debtor? Absolutely. I've done dozens of sales to my client, the trustee, and those sales properly fall to the bankruptcy estate. And Judge Mann identified that at the hearing on December 22nd and made that point to Mr. Hernandez, overruling his objection to the sale based on an argument that he'd suffer some tax consequences. To go back to the standard that the court is asked to evaluate the order, of course the court knows that its review is under the standard of abuse of discretion. And the bankruptcy court, we believe, properly identified the legal standard for approval of agreement as both a sale of some asset and a compromise and settlement of litigation claims held by and against the bankruptcy estate. Judge Mann, identifying Rule 9019 and Section 363, applied to her approval of the Agreement A. Judge Mann, in the December 22nd hearing, allowed arguments of the appellant with regard to Agreement A, overruled the appellant's arguments that he had not been properly served and Judge Mann went on to address the elements of AC properties as required to approve a settlement and compromise of claims and issues related to the transfer of the NUCCO action, the collection action, and additionally the court addressed the sale of the NUCCO LLC pursuant to the requirements of Section 363. If the court doesn't have any questions regarding the legal standard, then I turn to the consideration of whether the bankruptcy court's application of the legal standard was somehow theological, implausible, or without proper support and inferences to be drawn from the facts in the record. The trustee submits that the bankruptcy court's actions in approving Agreement A were none of these earmarks of improper application of the law. And I refer to the transcript of the hearing, Exhibit CC, the transcript of the December 22nd, 2022 hearing. There was lengthy dialogue with both the court and Mr. Hernandez and myself addressing all of the issues regarding both a 9019 approval and a 363 approval. Turning next to the appellant's issues, I first address, to the extent I haven't already done so, address the issue of improper notice, that the trustee's notice of the motion for approval of the agreement and authority to enter into the agreement was not proper. If not all of Mr. Hernandez's references in the record in his opening pleading that refer to improper notice, it's our contention that they are with reference to the proposed Agreement B. Agreement B, as the court may see from the record, included the transfer of interests or rights to real properties. And the court's concern with regards to improper notice was whether or not the creditors of those real properties had received sufficient notice under 7,000 series, anyway, of the rules. Setting aside on December 22nd the trustee seeking approval of Agreement B, then the notice, it is our contention, was proper because it provided the debtor and the creditor with proper notice of what would be sold, and the fact that things got teared down by the trustee and the buyer provided additional benefit to the estate. We didn't have to convey all of the interests that we originally thought or contemplated in the settlement and the compromise. We pared it down to one entity and two of the litigation matters, leaving for the estate to determine what it would do in the future with any or all of those assets. Turning next to Appellant's concerns regarding the benefit to the estate, this transaction, Agreement A, conveyed and resolved several protracted litigation, two contested litigation matters, as well as two appeals to the California Court of Appeal on those. The sale of the interest was of an asset identified by the debtors at a value of zero, and the bankruptcy estate is going to receive $50,000. I believe that addresses the concerns with regards to benefit to the estate. The next is the contention or issue of the appellant that the court improperly changed essential terms of the agreement. Judge Mann, in her tentative rulings and at the hearings on December 15th and December 22nd, repeatedly said that she could not change the terms of the agreement, and it was not from the record on December 22nd that the court can clearly see that the proposed buyer made representations and presentations to the court that it would settle for buying the NUCCO LLC, the NUCCO action and the collection action, and that it unchanged the amount it was willing to pay to the estate. The court gave the parties an opportunity at a recess to, quote-unquote, go out and get a meeting of the minds with regard to what would be transferred in that teared-down agreement, and there was no piecemeal by the bankruptcy court of the changes that were contemplated by the seller and the buyer in an under-agreement day. I think that the appellant's reference to the New Jersey bankruptcy court case of Roper, well, Roper essentially results in findings on cases similarly stating elements for approval of a compromise, like A and C properties in this district. His reference and reliance on that case for identifying for this court, somehow Judge Mann piecemealed the case as just improper. The last contention is that the trustee failed to provide evidence to support his assertions that the sale was proper. I think the record is clear that the trustee provided all of the necessary answers and responses to A and C properties and to 90-19, as well as 60-3 to have the court approve agreement A as a proper sale, addressing benefits to the estate and tax consequences, and that the estate would be responsible for those tax consequences. If the court doesn't have any other questions, I rest. Any questions? No. Okay. All right. Thank you. Thank you very much. We'll go back to Mr. Hernandez once we get the time clock reset. Okay. A little over eight minutes. Please go ahead, Mr. Hernandez. Thank you, Your Honor. So there were two issues. There was the tax issue, which I believe the courts received plenty of information on. There was the issue that there was no information provided to the court, which the court specifically mentioned earlier that there was no and I looked that up for the judge. It was on page 13 of the initial brief that has the excerpt from the transcript with reference to, I believe it was Exhibit CC. The other issue was there were two assets that were left. So at one point, opposing counsel stated that there was some kind of a meeting of the minds. There was no meeting of the minds when it came to the debtor. The only meetings of the minds that ever existed at any point were between one creditor and the trustee. That's it. Why is the debtor's agreement required? Well, we were an opposing party. We were one of the ones that was originally part of the – they were trying to get some kind of an agreement with the debtors, and we would not agree to any of this. It was going to create too many problems. When it comes to selling assets, who has to agree besides the trustee and the buyer? Nobody, but the trustee has duties. The trustee is supposed to try to get the highest dollar amount. The trustee never put this out for any kind of sale, never did any kind of an appraisal as to the value of it. There were two assets. One was the Newco case, but the other one was a collection action. There were two issues that the judge left of the seven in Exhibit A. So the fact that the trustee first submitted two agreements in one motion, I believe it is an issue. I think if you modify – if you don't approve A and B in their entirety, you didn't give proper notice. You have to do two separate. And let's say you can do two and have one, but what you can't do is you can't have Agreement A submitted to the court and then modify Agreement A and then say you gave proper notice when that modification was done at the hearing without any kind of an agreement of one of the objectors, which the judge wanted. Even where – putting aside Agreement B, even where looking at Exhibit Agreement A, the trustee ended up selling fewer assets for the same price, you think more notice is required in that situation? Yes, because the dollar amount was never correct, and the trustee never provided any kind of factual basis as to what the dollar amount – That's a different issue. That's not the notice issue. I'm wondering whether all the creditors had to be told all over again, okay, now we're selling fewer assets for the same price. Is that something that requires a new notice to creditors? I believe so. If you look at the Roper case, which Pozen Counsel just referred to, the Roper case says just that. You can't give partial notice. It's hiding the ball. You're basically putting a huge amount in and then all of a sudden narrowing it down to one little issue, which we never had any information on because the trustee never got any valuation for anything. So it seems to me you've got it backwards. Is that there wasn't – there was a price, and that price wasn't reduced, but what was sold was reduced. So if anything, creditors were getting more than set forth in the notice. Isn't that right? Not if the price was improper, because it was not based on any kind of fact. Two different questions, though. Two different questions. One is dealing with notice, and one is whether or not the judge properly exercised discretion in approving the sale. But as to notice, didn't creditors get adequate notice? Creditors got – no. In fact, creditors did not get adequate notice because notice was given to creditors based on in the judge's transcript. It could be seen in, I believe, in CC on page – an earlier page in there. But I specifically cited to the judge's comments about notice that the notice were given under 2002, not 7004. If that was for agreement, that's agreement B. 7004 notice is for the real property lien holders, not for what you're selling under agreement A. Agreement A, I believe, also had two real property assets in it also, but it may not have. However, the judge addressed the notice issue for both. But by changing the terms of that second notice, that all of a sudden now instead of $50,000 for seven items, it should be $50,000 for two items. It would give creditors some kind of notice that, hey, wait a minute. Were the original seven items worth not $50,000, it was only two, and these two that are left, is it worth a lot more? But we didn't have time to respond to any of that because it was all lumped into two big agreements that only a few of the items were addressed. And those two items that were addressed at the hearing were never given any kind of data from the trustee to say what the value was, other than to say we think it's zero. But that's not true. The assets are not worth zero, and we can see it right now. So we have the collection action and NUCO. NUCO itself may be worth much more than $50,000, but nobody was ever given notice that that was one of the issues at hand and what an appraiser would have thought. Or if he would have put that out for sale for NUCO, knowing that NUCO might be a 32% owner of a business, it could have gotten a lot more. There were multiple violations of the duties of the trustee in this case, and they just didn't give notice. They kept hiding the ball. They would not give valuations for anything. All right. Any further questions from the panel? No. All right. Anything further, Mr. Hernandez? No, Your Honor. I think that covers it. Okay. All right. Thank you very much. Thank you both. The matter is submitted. Thank you.
judges: Faris, Brand, Corbit